UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
ARBOR REALTY SR, INC.,

              Plaintiff,

   -vs.-                       **MEMORANDUM OF
                                     DECISION AND ORDER**
                                     11-cv-4626 (ADS)(GRB)
MARK S. KEENER,

              Defendant.
----------------------------------------------------------X

**APPEARANCES:**

**Morris, Manning & Martin, LLP**
*Attorneys for the Plaintiff*
1401 Eye Street, N.W., Suite 600
Washington, D.C. 20005
   By: Bonnie Hochman Rothell, Esq., Of Counsel

**Cullen & Dykman, LLP**
*Attorneys for the Plaintiff*
100 Quentin Roosevelt Blvd.
Garden City, NY 11530
   By: Thomas Baylis, Esq., Of Counsel

**Quadrino Schwartz**
*Attorneys for the Defendant*
666 Old Country Road, 9th Floor
Garden City, NY 11530
   By: Richard J. Quadrino, Esq.
       Harold J. Levy, Esq., Of Counsel

**SPATT, District Judge**.

      On September 22, 2011, the Plaintiff Arbor Realty Sr., Inc. ("Arbor") filed this action against the Defendant Mark S. Keener ("Keener"), in his individual capacity, seeking to recover, under a Letter Agreement, on certain loans made by Arbor to non-party companies for which Keener is a principal.  On October 25, 2012, Arbor, Keener, and the non-party companies

1

entered into a Settlement Agreement whereby Keener discharged Arbor of any legal claims Keener might have had arising out of the loans between the parties. Concurrently, Arbor discharged Keener of any legal claims Arbor might have had arising out of the loans between the parties, but only on certain payments by Keener to Arbor.

After Keener failed to remit certain payments to Arbor as required by the Settlement Agreement, Arbor moved to amend the complaint to add causes of action for, among other things, breach of the Settlement Agreement. This Court granted that motion as unopposed. Thereafter, Keener filed an answer, with counterclaims, and then an amended answer with counterclaims. Keener's counterclaims seek rescission of the Letter Agreement on the basis of fraud, lack of consideration, and/or mistake. Keener also seeks to set aside the Settlement Agreement by way of a declaratory judgment.

On October 28, 2013, Arbor moved pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 9(b) and 12(b)(6) to dismiss the counterclaims as barred by the Settlement Agreement, and, in the alternative, for failure to state a claim. For the following reasons, that motion is granted.

## I. BACKGROUND

A. Factual Background

The following facts are drawn from the pleadings for purposes of this motion and are generally not in dispute.

In January 2007, Arbor made loans to WL Investments I, LP (WL I) and WL Investments II, LP (collectively "the Borrowers") in the amount of $4,150,000 pursuant to the terms of a Mezzanine Loan Agreement. Keener was the principal for the borrowers and facilitated the transaction.

2

Shortly after this first closing, the parties restructured the Mezzanine Loan with regard to two Transfer of Physical Assets ("TPAs"). In July 2008, in order to effectuate the TPAs, the Mezzanine Loan was extinguished and converted to two separate subordinate loans to comply with the United States Department of Housing and Urban Development ("HUD") guidelines. Arbor alleges that, "in order to induce [it] to release [the borrowers] from the Loan Agreement and accept the subordinate loans, [Keener] made several representations to [Arbor and] promise[d] to pay all closing costs associated with the transaction as well as to make certain other payments. [Keener] represented that he would make payments on the loan shortly thereafter" (Amended Complaint ¶ 8).

To consummate the conversion, Arbor entered into two Promissory Notes, Secondary Financing Riders for TPA's ("Financing Riders"), Supplemental Loan Agreements ("SLAs"), Supplemental Deeds of Trust, and Payment Guaranties in connection with the subordinate loans, collectively totaling $4,150,000. Again, Keener was the principal for the Borrowers and facilitated the transaction.

At the time of the second closing in July 2008, the Borrowers and Keener were allegedly required to pay certain settlement costs and expenses in the amount of $188,000. However, they were not able to make this payment to Arbor at the time the subordinate loans closed and therefore sought an extension from Arbor to make the payment.

In order to proceed with the subordinate loan closings, Arbor allowed the nonpayment on the condition that Keener agreed to provide for such payments as set forth in the Letter Agreement executed at the time of the closings. Under the terms of the Letter Agreement, the Keener personally agreed to pay Arbor the full amount of $440,000 in four installments with $25,000 due on or before August, 2008; $100,000 due on or before September 15, 2008; $63,000

3

due on or before October 15, 2008; and $252,000 due on the earlier of October 31, 2008, 90 days from the recordation of the deeds of trust, or receipt of "surplus cash" by Keener. Arbor further alleges that Keener in his individual capacity executed Payment Guarantees on behalf of the Borrowers. In particular, Keener allegedly agreed to guarantee the Borrowers' obligations under the Loan Documents.

However, Keener allegedly failed to remit payment of the first installment due under the terms of the Letter Agreement. As such, Arbor required Keener to personally execute a Demand Note, made payable to Arbor, for value received in the amount of $24,000, with an annual fixed interest rate of ten percent and a confession of judgment on September 23, 2009 in the same amount.

As another condition for closing, pursuant to the SLAs executed in July 2008, the Borrowers were each required to maintain $90,000 in their respective Interest Reserve Accounts. As part of the closing documents, Keener also entered into Guaranties of Interest Reserve for each loan, in which he agreed to guarantee the Borrowers' obligations to replenish the Interest Reserve Accounts. The Borrowers have allegedly failed to replenish the Interest Reserve Accounts in the total amount of $120,678.82. Keener has also allegedly failed to replenish the Interest Reserve Accounts in that amount. At the time the complaint was filed, Arbor alleged that the Defendant was delinquent in the amount of at least $560,678.82.

B. <u>Procedural History</u>

On September 22, 2011, Arbor filed the initial complaint against Keener asserting six causes of action sounding in (1) breach of the Letter Agreement; (2) breach of the Demand Note; (3) breach of the Guaranties of Interest Reserve; (4) Breach of the Implied Covenant of Good

4

Faith and Fair Dealing; (5) Unjust Enrichment; and (6) Fraudulent Inducement.  Neither WL I or WL II is a party to this action.  On December 5, 2011, Keener answered.

On March 8, 2012, Arbor filed a motion for summary judgment.  Keener subsequently sought permission for leave to file an amended answer, which the Court granted.  In light of the Court's decision allowing Keener to file an amended answer, the Court denied Arbor's pending motion for summary judgment without prejudice.

In the interim, on April 11, 2012, WL I and WL II commenced a similar action against Arbor, titled <u>WL Investments, I LP v. Arbor Realty Sr, Inc.</u>, 12-cv-1774, in this Court.  There, WL I and WL II sought recovery of monthly sums paid to Arbor by WL I and WL II on the basis that they did not have "surplus cash" at the relevant times therein.

The parties then entered into a Settlement Agreement on or about October 15, 2012, which provides, in pertinent part:

> MUTUAL RELEASES.  Keener and WL I & II . . . hereby and forever unconditionally and irrevocably fully release and discharge Arbor . . . from any and all legal, equitable, administrative and/or other claims, counterclaims, setoffs, defenses, actions, causes of action, suits, arbitrations, special proceedings, proceedings, debts, dues, sums of money, appeals, accounts, reckonings, bonds, bills, specialties, covenants, disputes, contracts, agreements, promises, controversies, damages, judgments and demands of whatever kind or character, known or unknown, suspected or unsuspected, in law or in equity, arising from the beginning of time, that the Keener Parties ever individually or collectively had, now have or hereafter can, shall or may have against the Arbor Parties, arising out of or in any way relating to: (1) the Litigations, whether asserted or not asserted therein, and (2) any claims, rights or remedies the Keener Parties may have relating to the Loans.

(Arbor's Reply Mem, Exh A., ¶ 3)   The Settlement Agreement also provides:

> Likewise, upon receipt [of a sum certain within sixty days of the execution of the Settlement Agreement as delineated for in paragraph 1], the Arbor parties shall, forever unconditionally and irrevocably fully release and discharge the Keener Parties from any and all legal, equitable, administrative and/or other claims, counterclaims, setoffs, defenses, actions, causes of action, suits, arbitrations, special proceedings, proceedings, debts, dues, sums of money, appeals, accounts,

5

>reckonings, bonds, bills, specialties, covenants, disputes, contracts, agreements, promises, controversies, damages, judgments and demands of whatever kind or character, known or unknown, suspected or unsuspected, in law or in equity, arising from the beginning of time, that the Arbor Parties ever individually or collectively had, now have or hereafter can, shall or may have against the Keener Parties, arising out of or in any way relating to: (1) the Litigations and (2) any claims, rights or remedies the Arbor Parties may have relating to the Loans.

(Id.).

As a result of the Settlement Agreement, on October 19, 2012, WL I, WL II, and Arbor agreed to dismiss with prejudice the separate action brought by WL I and WL II. Keener concedes that he has failed to render payment as required by the Settlement Agreement. However, Keener argues that Settlement Agreement fails for lack of consideration.

In February 2013, Keener notified Arbor that for the fiscal year 2011, WL I had "surplus cash" in the amount of $61,233. Indeed, Arbor received confirmation that the "surplus cash" was available through a HUD audit it received. However, WL I allegedly failed to distribute the surplus cash to Arbor pursuant to the Financing Riders. Likewise, Keener allegedly failed to satisfy his obligations as a guarantor and failed to ensure that the surplus cash payments were made to Arbor. Instead, Keener allegedly directed the surplus cash payments to International Partners, LLC, an entity owned and controlled by Arbor. In addition, Arbor alleges that, in the fiscal year 2012, WL I made disbursements of approximately $190,000 in surplus cash. Arbor alleges that to the extent such "surplus cash" existed, Keener was obligated, pursuant to the Payment Guaranties, to ensure such funds are distributed to Arbor to pay with regard to the indebtedness.

On March 8, 2013, Arbor moved to amend the complaint to add claims for breach of the Settlement Agreement, attorneys' fees and costs, and breach of the Payment Guaranties.

On June 1, 2013, the Court granted that motion as unopposed.

6

On June 13, 2013, Keener filed an answer, with counterclaims, to the amended complaint. On June 28, 2013, Keener filed an amended answer, with counterclaims, to the amended complaint. In particular, Keener sought rescission of the Letter Agreement due to (1) fraud, (2) lack of consideration; and (3) mistake. Keener also seeks a declaratory judgment regarding the rights and obligations of the parties under the Settlement Agreement.

In the amended answer, Keener contends that, while Arbor seeks to enforce the terms of the Settlement Agreement here, Arbor has taken a contrary legal position in a second action in Texas captioned WL Investments I, LP v. Arbor Realty SR, Inc., Docket No. 13-DCV-206808, arguing that the Settlement Agreement is null and void and seeking damages beyond those provided in the Settlement Agreement. Keener also seeks to re-file the separate action previously filed before this Court and discontinued as part of the Settlement Agreement.

On October 28, 2013, Arbor moved pursuant to Fed. R. Civ. P. 9(b) and 12(b)(6) to dismiss the counterclaims as barred by the Settlement Agreement and for failure to state a cause action. In opposition, Keener invokes the doctrine of election of remedies, essentially arguing that Arbor cannot both terminate the Settlement Agreement and sue for total breach, as Arbor does in its case-in-chief, and enforce its provisions, particularly the release of Arbor, as Arbor does in seeking to dismiss the amended counterclaims. Thus, Keener states, once Arbor elected to terminate the Settlement Agreement, Keener was no longer bound by its release of Arbor. Arbor counters that Keener's release of Arbor constituted a non-conditional obligation independent from the rest of the Settlement Agreement. Thus, Arbor asserts, Keener's release of Arbor remains enforceable notwithstanding the fact that Arbor admittedly opted to terminate the Settlement Agreement upon Keener's alleged breach. Otherwise, Arbor insists, a breaching

7

party, such as Keener, could evade certain of its contractual obligations by simply breaching certain other contractual obligations.

## II. DISCUSSION

As an initial matter, Arbor contends that the defense of election of remedies fails because it has not been adequately raised in the pleadings. "Under New York law, election of remedies is an affirmative defense." MBIA Ins. Corp. v. Patriarch Partners VIII, LLC, 842 F. Supp. 2d 682, 709 (S.D.N.Y. 2012), reconsideration denied in part (Apr. 4, 2012), citing Lumber Mut. Cas. Ins. Co. of N.Y. v. Friedman, 176 Misc. 703, 706, 28 N.Y.S.2d 506 (1941)). "The general rule in federal courts is that a failure to plead an affirmative defense results in a waiver." Travellers Int'l, A.G. v. Trans World Airlines, 41 F.3d 1570, 1580 (2d Cir. 1994). Further, Fed. R. Civ. P. 8(c) requires a defendant to "affirmatively state any avoidance or affirmative defense," and affirmative defenses that are not raised in the pleading stage should be dismissed. In re Cross Media Mktg. Corp., 367 B.R. 435, 446 (Bankr. S.D.N.Y. 2007) ("[U]nless Defendants can assert that the affirmative defenses now being alleged were not available at the pleading stage, Defendants failure to plead these defenses should result in a waiver.").

Here, the Court is not presented with the doctrine of "election of remedies" in its usual posture, as a defense to an opposing party's claims for relief. Rather, Keener invokes the doctrine of "election of remedies" in opposition to a motion to dismiss – that is, as legal justification for his counterclaims. As the "election of remedies" argument is not being employed as an affirmative defense here, at least at this juncture of the litigation, it is unclear whether Keener was required to preserve this argument for purposes of the motion to dismiss the counterclaims.

Nonetheless, to the extent Keener was required to preserve an "election of remedies" argument, the Court finds that he did so. The twenty second "affirmative defense" in the amended answer, with counterclaims, states that "[t]he Settlement Agreement constitutes the sole remedy available to plaintiff in this action." In the Court's view, this language sufficed to put Arbor on notice that Keener was invoking the doctrine of "election of remedies." Further, the Court notes that Arbor had the opportunity, and did, respond directly to this doctrinal argument in its reply papers.

Having determined that Keener adequately raised election of remedies in his pleadings, the question becomes whether that defense bars Arbor's suit as a matter of law. The Court answers that question in the negative.

New York's "election of remedies" doctrine provides that "one may not both affirm and disaffirm a contract . . . or take a benefit under an instrument and repudiate it." Lumber Mut. Casualty Ins. Co. of N.Y, 176 Misc. at 705 (quotations omitted); see also Morse/Diesel, Inc. v. Fidelity and Deposit Co. of Maryland, 768 F. Supp. 115, 117 (S.D.N.Y. 1991) (stating the rule that plaintiff cannot recover damages for fraud and also win rescission pursuant to the election of remedies rule because "an award of damages for fraud affirms the contract" while "rescission vitiates the contract and places the parties in status quo prior to the transaction."). The election of remedies rule thus bars the pursuit of alternative relief after a party has "chosen one of two or more co-existing inconsistent remedies, and in reliance upon that election, that party must also have gained an advantage, or the opposing party must have suffered some detriment." 331 East 14th St. LLC v. 331 East Corp., 293 A.D.2d 361, 740 N.Y.S.2d 327 (1st Dep't 2002) (quoting Prudential Oil Corp. v. Phillips Petroleum Co., 418 F. Supp. 254, 257 (S.D.N.Y. 1975) (quotations omitted)).

9

Here, contrary to Keener's assertions, Arbor is not exercising two inconsistent rights or seeking to obtain double recovery. Paragraph 1 of the Settlement Agreement obligated Keener to remit certain payments to Arbor. Under the first part of Paragraph 3 of the Settlement Agreement, Keener "forever and unconditionally and irrevocably" released Arbor from any claims Keener may have had against Arbor. Conversely, under the second part of Paragraph 3 of the Settlement Agreement, Arbor "forever unconditionally and irrevocably" released Keener from any claims Arbor may have had against Keener, but only "upon receipt of the payment referenced in paragraph 1." In other words, Keener's payment of Arbor under Paragraph 1 constituted a condition precedent to Arbor's release of Keener. Jafari v. Wally Findlay Galleries, No. 89 Civ. 2390, 1989 WL 116437 at *3 (S.D.N.Y. 1989)(holding, under New York law, that a contract term providing that "[p]ainting to be shipped on receipt of payment" should be interpreted as a condition precedent); Preferred Mortgage Brokers, Inc. v. Byfield, 282 A.D.2d 589, 590, 723 N.Y.S.2d 230, 231 (2d Dep't 2001) (language in the parties' contract that required the defendants to pay the plaintiff a fee "directly upon [the] signed acceptance of a commitment," created a condition precedent).

Here, Keener never remitted payment under Paragraph 1. Therefore, Arbor is not bound to release any claims it has against Keener.

By contrast, the Court notes that no language of precondition applied to Keener's release of Arbor. Rather, Keener's release of Arbor constituted an independent obligation on the part of Keener. Thus, the Court finds that Keener's failure to comply with Paragraph 1 of the Settlement Agreement – and Arbor's termination of the agreement on the basis of that alleged breach – does not thereby relieve Keener of his release of Arbor. Stated another way, the Court finds that Keener's release of Arbor survived the termination of the Settlement Agreement.

Applying that release of Arbor to this litigation, the Court finds that Keener cannot be heard to challenge the legitimacy of the Letter Agreement, as he does in his counterclaims, because any such claims fall within the scope of Keener's release of Arbor. However, Keener may argue that the Keener's release of Arbor is itself somehow invalid.

Indeed, "a release may be set aside on the traditional bases of fraudulent inducement, fraudulent concealment, misrepresentation, mutual mistake or duress." Global Minerals & Metals Corp. v. Holme, 35 A.D.3d 93, 98, 824 N.Y.S.2d 210, 214 (1st Dep't 2006)(citations omitted). In this case, the Court finds that there is no plausible allegation that Keener's release of Arbor was given under duress, illegality, fraud, or mutual mistake.

Similarly, Keener's release of Arbor does not fail for lack of consideration. Under New York law, a written release "shall not be invalid because of the absence of consideration or of a seal." N.Y. Gen. Obig. Law § 15–303 (McKinney 2012). Further, "the parties to a contract are free to bargain as to the consideration exchanged, even if that consideration is 'grossly unequal or of dubious value.'" Pilarczyk v. Morrison Knudsen Corp., 965 F. Supp. 311, 322 (N.D.N.Y. 1997) (quoting Apfel v. Prudential–Bache Secs., Inc., 81 N.Y.2d 470, 475, 600 N.Y.S.2d 433, 435, 616 N.E.2d 1095 (1993)).

Having found that Keener's release of Arbor constituted a valid independent obligation of the Settlement Agreement, the Court therefore finds that Keener's counterclaims are barred as a matter of law by the release and grants Arbor's motion to dismiss those counterclaims. For this reason, the Court need not address Arbor's remaining arguments in opposition to the counterclaims.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that Arbor's motion to dismiss Keener's counterclaims is granted and those counterclaims are dismissed with prejudice.

**SO ORDERED.**
Dated: Central Islip, New York
December 19, 2013

                                                                                                  *Arthur D. Spatt*
                                                                                             ARTHUR D. SPATT
                                                                                             United States District Judge